UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE PRICE, Trustee of The Joyce A. Childress Trust of 2004,<br><br>Plaintiff,<br><br>vs.<br><br>GRAND BANK FOR SAVINGS, FSB, a Federal Savings Bank,<br><br>Defendant. | CASE NO. 18cv440-LAB (NLS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [Dkt. 14];**<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STRIKE [Dkt. 15];**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO EXPUNGE LIS PENDENS [Dkt. 23]** |

After this Court dismissed her initial complaint in October 2018, Plaintiff Natalie Price filed a First Amended Complaint against Defendant Grand Bank for Savings, FSB.[1] Grand Bank now brings three motions: a motion to dismiss for failure to state a claim, a motion to strike Price's prayer for punitive damages, and a motion to expunge the *lis pendens* that Price recorded after this lawsuit was filed. Those motions are **GRANTED IN PART AND DENIED IN PART**.

---

[1] Grand Financial Corporation, Grand Bank's parent company, was not named as a party in Price's FAC and is no longer at issue in this suit. *See Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990) ("The fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original.").

**BACKGROUND**

This Court's previous order (Dkt. 12) lays out the background of the case and, except where necessary, it's not repeated here. In short, Price is sole owner (via trust) of a property originally owned by her grandmother, Joyce Childress. In 1998, Childress took out a $48,000 loan that was secured against the property. Childress placed the property in a trust in 2014, but the trust never formally assumed the loan. Nonetheless, when Childress passed away in 2013, the trustees—first Price's father and later Price herself—continued to make payments on the loan. When those payments stopped in 2017, Defendant Grand Bank initiated foreclosure proceedings.

Price filed this suit to block the foreclosure in February 2018, alleging, among other things, that Grand Bank violated of the Fair Housing Act (FHA) and the Fair Debt Collection Practices Act (FDCPA). Dkt. 1. Plaintiff alleged in her initial complaint—and continues to allege in her FAC—that Grand Bank engaged in a series of schemes designed to force Plaintiff to default on the loan. *See generally* FAC, Dkt. 13, at ¶ 18a-g. These actions included declining payments submitted through Western Union, withdrawing funds from her bank account without authorization, frequently and intentionally losing her payments, and sending harassing communications regarding payment due dates. Plaintiff also alleges that after the death of her grandmother, the County of San Diego improperly assessed a transfer tax. While she was in the process of resolving that issue with the County, Grand Bank proceeded to pay the outstanding property taxes on the property, despite the fact that Price informed Grand Bank the taxes were assessed in error. Grand Bank then included the amount of those taxes in the arrearages Price was required to pay to prevent foreclosure. As a result of all of these actions, Price claims Grand Bank effectively prevented her from paying off the loan. *Id.* at ¶ 19. She also claims she has suffered physical ailments, including a heart attack, as a result of stress from the foreclosure proceedings. *Id.* at ¶ 16.

In October 2018, this Court granted Grand Bank's original motion to dismiss, dismissing with prejudice most of Price's claims but inviting her to amend several of her

state law claims if she believed she could fix the deficiencies identified. Price took the Court up on its offer, filing a FAC containing three causes of action: (1) Violation of the California Homeowners Bill of Rights ("HBOR"); (2) Violation of California's Unfair Competition Law ("UCL"); and (3) Intentional Infliction of Emotional Distress ("IIED"). Dkt. 13. Defendant Grand Bank moves again to dismiss each of the claims in Price's complaint. It also moves to strike her prayer for punitive damages and to expunge the *lis pendens* that Price recorded on the property after this lawsuit was filed.

**ANALYSIS**

**1.  Standing**

Grand Bank urges the Court, as it did in its motion to dismiss Price's initial complaint, to dismiss the case for lack of standing. In its view, Price is not a signatory to the loan and has not legally assumed its obligations, so she has no standing to sue to prevent foreclosure. As explained in the Court's previous order, however, cases holding that a non-signatory lacks standing to sue on a loan are inapposite where, as here, the plaintiff is the sole owner of the property and the only person able to sue to prevent possible foreclosure. *See, e.g., Washington v. Green Tree Servicing, LLC*, 2017 WL 1857258, at *5 (S.D. Ohio 2017) (holding that a non-signatory plaintiff had standing to sue where she "became the sole title owner of the property and thus a successor in interest in the property upon the death of her mother"); *Frank v. J.P. Morgan Chase Bank, N.A.*, 2016 WL 3055901, at *5 (N.D. Cal. 2016) (finding that a widowed plaintiff had standing to sue in part because "her interest in the property is at stake" and because "the threat of default [and] possible foreclosure . . . surely obligate her under the mortgage."). Grand Bank's rule holds true in other situations—for example, where one spouse is party to the loan but the other is not, the non-party spouse has no standing to sue in part because there is a perfectly acceptable plaintiff (the other spouse) available to litigate the case and protect the property. *See, e.g., Cabrera v. Countrywide Fin.*, 2012 WL 5372116, at *8 (N.D. Cal. 2012); *Cleveland v. Deutsche Bank Nat. Trust Co.*, 2009 WL 250017, at *2 (S.D. Cal. 2009). But a rule that would strip the sole owner of the right to sue under

an encumbering loan simply because they were not the owner of the property when the loan was issued would make little sense, especially where the owner has attempted to continue making loan payments. Accordingly, the Court reaffirms its prior decision that Price has standing to litigate her claims here.

Grand Bank suggests that Price may not actually be the owner of the property. At this stage of the case, the Court must accept as true Price's allegation that she "assumed the role of trustee" and owns the property. But if discovery casts doubt on that conclusion, it should be brought to the Court's attention immediately. If Price is not the legal owner of the property, either as trustee or individually, she has no standing to pursue her claims here. *See Ctr. For Biological Diversity v. Kempthorne*, 588 F.3d 701, 707 (9th Cir. 2009) ("[T]he jurisdictional issue of standing can be raised at any time.").

Further, even if Price *is* the legal owner of the property, she cannot continue to take advantage of the loan without the obligations that come with it. The rule recognized above—that a non-signatory plaintiff has standing to sue to prevent foreclosure—is a stopgap measure intended to protect an owner who has made a good-faith effort to comply with the terms of a loan from being foreclosed on simply because he or she was not the owner when the loan was issued. But Grand Bank is correct that, under most circumstances, a plaintiff must be party to the loan in order to sue under it. If Price is the legal owner of the property, she or the trust must assume the loan no later than **July 18, 2019**.[2] The Court acknowledges that this date is somewhat arbitrary, but the property was placed in trust in approximately 2004 and Ms. Childress passed away in 2013, so assumption is now long overdue.

### 2. Defendant's Motion to Dismiss

Apart from its argument that Price lacks Article III standing to pursue her claims, which the Court again rejects, Grand Bank also argues that her FAC should be dismissed

---

[2] Grand Bank is **ORDERED** to work with Price in good faith to accomplish this. The parties are also encouraged to explore an amicable resolution to this litigation. Magistrate Judge Nita Stormes will assist the parties as necessary.

for failure to state a claim. FRCP 12(b)(6). The Court will address each of Price's causes of action in turn.

### a. Claim No. 1: HBOR

Grand Bank argues that Price's first cause of action for violation of the California HBOR must be dismissed because she does not meet the statute's definition of "borrower" and because she does not identify the specific provision of the statute that Grand Bank supposedly violated.

HBOR extends a number of statutory protections to "borrowers," which it defines as "any natural person who is a mortgagor or trustor." Cal. Civ. Code. § 2920.5(c)(1). Grand Bank submits that Price is not eligible for HBOR's protections because the property at issue is owned by a trust and not a "natural person." The Court agrees. As the Central District noted in *Brown v. CitiMortgage, Inc.*, 2016 WL 7507762, at *3 (C.D. Cal. 2016), the language limiting the statute's protections to "natural person[s]" was deliberate: "HBOR is a recently enacted statute, and its drafters were no doubt well aware of many homeowners' decisions to manage their property in trusts. Nonetheless, those drafters elected to specifically exclude non-natural persons from protection under HBOR." *Id.* "The clear statutory language of HBOR controls here[.] [B]ecause the Plaintiffs Michael and Mary Brown are not mortgagors or trustors, and neither the Trust nor Fari Shady Canyon is a natural person, none of the Plaintiffs has standing to pursue HBOR claims." *Id.* The Court reaches the same conclusion here and finds that Price is not a "borrower" within the meaning of the HBOR. She therefore cannot take advantage of its protections. Price's claim under the HBOR is **DISMISSED WITH PREJUDICE.**

### b. Claim No. 2: UCL

As with her initial complaint, Price's FAC alleges that Grand Bank engaged in "unlawful, unfair or fraudulent business act(s) or practice(s)" in violation of Cal. Bus. & Prof. Code §17200. The gist of her claim is that Grand Bank intentionally designed a scheme to disrupt, reject, misplace, and/or lose her mortgage payments such that the

1  loan eventually went into default.  She also claims she suffered a heart attack as a result
2  of stress from Grand Bank's aggressive foreclosure tactics.

To bring a claim under the UCL, a plaintiff must "have suffered an injury in fact and lost money or property as a result of . . . alleged unfair or fraudulent practices." *DeLeon v. Wells Fargo Bank, N.A.*, 2011 WL 311376, *7 (N.D. Cal. 2011).  The plaintiff must also show "causal connection" between the plaintiff's claimed injury in fact and the defendant's alleged UCL violation.  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010).

Because the Court has dismissed Price's only statutory claim—violation of the HBOR—her claim under the UCL must also be dismissed to the extent it is based on the statute's "unlawful" prong.  *See Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (Cal. Ct. App. 2001) (When a UCL claim is derivative of other substantive causes of action, the claim "stand[s] or fall[s] depending on the fate of the antecedent substantive causes of action.").

Price's claim under the UCL's "fraudulent" prong must likewise be dismissed because she has failed to plead with particularity any specific misrepresentations made by Grand Bank.  *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1112 (N.D. Cal. 2015) ("Claims under the UCL fraudulent prong must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).").  Indeed, Price does not identify *any* specific statements or actions by Grand Bank that she relied on to her detriment.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (Cal. 2009) (The UCL "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong.").

But a business practice that is not "unlawful" or "fraudulent" may nonetheless be actionable as "unfair."  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (Cal. 2003).  An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (internal quotation marks omitted).  In the context of foreclosures, the UCL

requires a plaintiff alleging unfair actions by the foreclosing defendant to plead "a causal link between her economic injury, the impending nonjudicial foreclosure of her home, and the . . . unfair . . . acts allegedly committed by the Defendants." *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 523 (Cal. Ct. App. 2013) *disapproved of on other grounds by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (Cal. 2016).

Grand Bank argues that there is no nexus between any "unfair" practices and the impending foreclosure. In Grand Bank's view, it was Price's decision to default on the loan that triggered the foreclosure, not Grand Bank's actions. Grand Bank points to the *Jenkins* case as illustrative. In that case, the court held that where a plaintiff admitted to defaulting on the loan, she could not state a claim under the UCL's "unfair" prong because it was her default, not the defendant's actions, that triggered the foreclosure. *Id.* But there is a meaningful difference between that case and this one. In *Jenkins*, the plaintiff's "default occurred *prior to* the six unlawful or unfair act she alleges as the basis for her UCL action." *Id.* (emphasis in original). Even if the defendant violated the UCL by acting unfairly, those unfair actions could not have been causally related to the foreclosure because they occurred *after* the default. Not so here. Price alleges that Grand Bank intentionally designed a system to force her into default and foreclosure. She alleges, for example, that Grand Bank "disrupted the payment of monthly mortgage payment[s], rejected over $9,000 in payments sent by Plaintiff via Western Union from March 2016 through September 2017, misplaced and lost payments, [and] imposed unlawful demands that payments be made by 3 p.m. Mississippi time despite the property being located in San Diego, California." Dkt. 13. At ¶ 38. Those actions occurred before the loan went into default. Accepting these allegations as true, which the Court must do at this stage, Price has stated a plausible claim for relief under the UCL's "unfair" prong because the default and impending foreclosure was caused, at least in part, by Grand Bank's actions.[3]

---

[3] Price's heart attack is a red herring here. While she may be able to show that her heart attack was *also* a cognizable injury, all she needs to show at this point is that she stood

1  Further, these actions are at least plausibly "immoral, unethical, oppressive,
2  unscrupulous, or substantially injurious to consumers." *McDonald*, 543 F.3d at 506.
3  Grand Bank's motion to dismiss Price's UCL claim is **GRANTED** as to her claims under
4  the unlawful and fraudulent prongs. Those claims are **DISMISSED WITH PREJUDICE**
5  because, despite being given the opportunity to amend, she still has not corrected the
6  deficiencies identified. Grand Bank's motion is **DENIED** as to Price's claims under the
7  UCL's unfair prong.

        **c.**      **Claim No. 3: IIED**

Price's final claim is for IIED, which requires sufficient allegations showing (i) outrageous conduct by the defendant, (ii) an intention by the defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress. *Nally v. Grace Cmty. Church,* 47 Cal. 3d 278, 300 (Cal. 1988). To be classified as outrageous, a defendant's alleged conduct should be extreme enough "to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminster,* 32 Cal. 3d 197, 209 (Cal. 1982). In other words, "[t]he conduct must be such that it would cause an average member of the community to immediately react in outrage." *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1203 (S.D. Cal. 2010) (quoting *Gomon v. TRW, Inc.,* 28 Cal. App. 4th 1161, 1173 (Cal. Ct. App. 1994)).

The first issue with Price's IIED claim is that she is litigating this case on behalf of a trust, not in her individual capacity. Because "a legal entity such as a trust cannot suffer emotional distress," this claim fails as a matter of law. *Caso v. Hartford Cas. Ins. Co.*, 2008 WL 1970024, at *4 n.9 (E.D. Cal. 2008).

Further, Price still has not plausibly pled that Grand Bank intended to cause her emotional distress nor that its conduct was outrageous. She alleges that "Defendants

---

to lose the property. This is injury enough. *See, e.g., Jenkins*, 216 Cal. App. 4th at 523 (plaintiff must "plead a causal link between her economic injury, *the impending nonjudicial foreclosure of her home*," and the defendant's unfair acts) (emphasis added).

1  harassed and taunted [her,] which led to Plaintiff's health deteriorating and resulting in a
2  heart attack." Dkt. 13 at ¶ 44. As an example, she cites two specific emails. In one, an
3  individual from Grand Bank informs Price: "You have your letter. You have a copy of the
4  check. You know what payments are due. Therefore, you know what the total amount is
5  owed." *Id.* at ¶ 18.e.i. The other email reads: "You're running out of time to get the
6  payment here." *Id.* at ¶ 18.e.ii. Neither of these emails can reasonably be described as
7  outrageous. The Court accepts as true the allegation that Grand Bank misplaced loan
8  payments and made it unreasonably difficult for Price to make payments, but neither this
9  conduct nor the communications Price points to "would cause an average member of the
10 community to immediately react in outrage." *Mehta*, 737 F. Supp. 2d at 1203. Price's
11 "threadbare" allegations of IIED fail to state a claim, so this claim is **DISMISSED WITH**
12 **PREJUDICE**. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### 3. Motion to Strike

Grand Bank moves to strike Price's prayer for punitive damages, arguing that she has not sufficiently pled facts that would support a finding that Grand Bank was guilty of "oppression, fraud, or malice." Cal. Civ. Code § 3294. While the likelihood of Price receiving punitive damages in this case seems remote, she has plausibly pled that Grand Bank implemented a system that was specifically designed to force her into default and foreclosure. If a jury believes that, they could conceivably find that Grand Bank's behavior was oppressive, although perhaps not fraudulent or malicious. *See id.* ("'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."). Grand Bank may revisit this argument at summary judgment, but for now the motion to strike, Dkt. 15, is **DENIED**. *See also Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) ("[S]triking a party's pleadings is an extreme measure, and, as a result, we have previously held that motions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.").

/ / /

/ / /

### 4. Motion to Expunge Lis Pendens

Finally, Grand Bank moves to expunge the *lis pendens* that Price recorded on the property the day after this lawsuit was filed. A *lis pendens* serves as "notice of pendency of action in which [a] real property claim is alleged" and generally clouds title to the property, making it more difficult, if not impossible, to foreclose. Cal. Civ. Proc. Code § 405.20. When a party moves to expunge a recorded *lis pendens*, as Grand Bank has done here, the court must grant the motion upon a finding that the claimant—here, Price— has failed to establish by a preponderance of the evidence the probable validity of the real property claim. Cal Civ. Proc. Code § 405.32. "It is the party who opposes the expungement of a notice of *lis pendens*, rather than the party seeking expungement, who bears the burden of proof at the expungement hearing." *Malcolm v. Superior Court*, 29 Cal. 3d 518, 525–26 (Cal. 1981).

Price has not meaningfully opposed Grand Bank's motion. As discussed above, the Court concludes that Price has plausibly stated a claim under California's UCL. But it was incumbent on her, the party opposing the expungement, to show not just that her claims were plausible, but that it was *more likely than not* she would succeed on her claims. She has not done so. She has submitted no evidence in opposition, nor done anything more than point to the allegations in her complaint. The Court finds that she has not met her burden in opposing the motion to expunge and therefore **GRANTS** Grand Bank's motion to expunge the *lis pendens* recorded on February 27, 2018. Dkt. 23.

Because Grand Bank has prevailed on its expungement motion, it is entitled to reasonable attorneys' fees and costs "unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust." Cal. Civ. Proc. Code § 405.38. The Court finds here that imposition of attorney's fees is not warranted. While Price has not proven by a preponderance of the evidence that she is likely to succeed on her claims, the Court found that she plausibly stated a claim for relief under the UCL, so it cannot conclude that she

acted without "substantial justification."  Grand Bank's motion for attorneys' fees is **DENIED.**

### CONCLUSION

For the reasons above, Grand Bank's Motion to Dismiss is **GRANTED** as to Price's claims for (1) violation of the HBOR, (2) violation of the "unlawful" and "fraudulent" prongs of the UCL, and (3) intentional infliction of emotional distress, but **DENIED** as to Price's claims under the "unfair" prong of the UCL.  Dkt. 14.  Grand Bank's Motion to Strike is **DENIED**.  Dkt. 15.  Grand Bank's Motion to Expunge the *Lis Pendens* is **GRANTED**, but the corresponding request for attorneys' fees is **DENIED.**  Dkt. 23.

**IT IS SO ORDERED**.

Dated: April 22, 2019

*Larry A. Burns*
**Honorable Larry Alan Burns**
Chief United States District Judge